IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| In re: | * | |
| La Mesa Racing, LLC | * | Case No: 07-17069-NVA |
| Debtor | * | (Chapter 11) |

\* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM IN SUPPORT OF US TRUSTEE'S MOTION TO CONVERT TO CHAPTER 7 AND IN OPPOSITION TO DISMISSAL

Creditor and former counsel to Debtor, Gohn, Hankey & Stichel, LLP ("GHS"), hereby files this Memorandum in Support of the Motion to Convert to Chapter 7 filed by the U.S. Trustee (Docket No. 127) and in Opposition to Dismissal, and states as follows:

### INTRODUCTION

This case was filed as an involuntary bankruptcy by Debtor La Mesa Racing, LLC's creditors on July 31, 2007 (the "Petition Date"), because of the feud that existed between Debtor's two warring partners, William L. Siskind, who filed an individual bankruptcy before this Court, and Stephen A. Vincent, which caused creditors to go unpaid, despite the fact the value of Debtor's assets, primarily a defunct racetrack located in Raton, New Mexico (the "Racetrack Property"), far exceeds its debts. The war between the partners has been settled and Vincent now controls Debtor outright. But Debtor's creditors continue to go unpaid and Vincent has little to no incentive to pay them. Simply put, the US Trustee's Motion to Convert this case to chapter 7 should be granted, so that Debtors' Racetrack Property is liquidated to pay creditors. Conversely, if this case is dismissed, it will lead to costly, piecemeal litigation, which will defeat the purpose of the involuntary bankruptcy and be a disaster for creditors.

## BACKGROUND

Debtor and Internal Governance

1. Debtor is a limited liability company organized under the laws of New Mexico. Debtor owns a defunct racetrack located in Raton, New Mexico (the "Racetrack Property").

2. Debtor's Articles dated October 8, 1998 were executed by Siskind and Vincent. Both men executed the Articles in the capacity of "Manager."

3. Debtor's Articles were filed with the State Corporation Commission of New Mexico (the "Commission"), n/k/a the Public Regulation Commission, on or about October 19, 1998. Debtor's Articles bear the stamp of the Commission dated October 19, 1998, which states "FILED IN OFFICE OF NM STATE CORPORATION COMMISSION." *Id.*

4. Article 4 of the Articles, titled "Management," states that "[t]he management of the Company is jointly vested in Steven Vincent and William L. Siskind, provided, however, either Steven Vincent and William L. Siskind, **acting alone, is authorized to enter into contracts, management or otherwise, on behalf of the Company.**" *Id.* at Art. 4 (emphasis added.)

5. Article 5 of the Articles, titled "Internal Affairs," provides that "[t]he regulation of the internal affairs of the Company shall be governed by the Operating Agreement by and Among the Members of the Company." *Id.* at Art. 5.

6. In that regard, on or about October 30, 1998, Messrs. Siskind and Vincent executed a document titled "Operating Agreement for La Mesa Racing Limited Liability Company" (the "Agreement").

7. Article V of the Agreement provides that the members of La Mesa "agree to share in all post-formation capital contributions, profits, and surplus of the Company according to the

percentage of their membership." The Article goes on to provide that each of the two members, Messrs. Siskind and Vincent, owns an undivided fifty-percent (50%) interest in La Mesa. These provisions reflect the standard course of dealings between Siskind and Vincent with regards to all of their joint venture projects.

Siskind's Bankruptcy Proceeding

8. On October 9, 2002, Siskind filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of Maryland, Case No. 02-65786.

9. Siskind's bankruptcy filing was precipitated by his volatile business relationship with Vincent. Siskind and Vincent are partners in connection with Debtor and Casino del Caribe, SA (the "Casino"), a casino located in the Dominican Republic.

10. Debtor previously had a contract for the sale of its Racetrack Property to International Financial Solutions, Inc. ("IFS") for $12 million dated September 17, 2003.

11. Mr. Vincent, however, refused to consent to that sale.

12. On October 22, 2003, Siskind filed a Complaint for Preliminary and Permanent Injunction and Declaratory relief before this Court, Case No. 02-65786, seeking an order enjoining Vincent from interfering with Debtor's sale of its Racetrack Property. Before that case came to trial, however, IFS pulled out of the deal.

13. On June 29, 2005, Republic Credit Corporation ("Republic"), a creditor of Siskind filed Republic Credit Corporation I's Third Amended Liquidating Plan of Reorganization of William Leigh Siskind (the "Siskind Plan") and the Third Amended Disclosure Statement in Connection With Republic Credit Corporations I's Third Amended

Liquidating Plan of Reorganization of William Leigh Siskind (the "Siskind Disclosure Statement").

14.     On November 4, 2005, this Court entered the Consent Order Approving Proposed Third Amended Disclosure Statement and Confirming Republic Credit Corporation I's Third Amended Liquidating Plan of Reorganization of William Leigh Siskind (the "Confirmation Order").

15.     Pursuant to the Plan, upon the Effective Date, the Siskind Trustee was to be appointed as the plan trustee for purpose of liquidating Siskind's assets, including Debtor.

16.     In particular, the Siskind Trustee "Shall have the rights, powers and duties of a trustee under Chapter 7 and 11, including, but not limited to, the rights, powers and duties under Section 723 of the Bankruptcy Code and the rights to seek to sell both [Siskind's] Estate's interest as vested in the Trustee and the interest of any co-owner in property in which the debtor had an undivided interest such as a tenant in common, joint tenant or tenant by the entirety."

17.     Pursuant to Siskind Plan § 6.1, all of the property of the Siskind's Estate vested in the Siskind Trustee on the Effective Date of the Siskind Plan.

18.     Pursuant to Siskind Plan § 6.8, "[Siskind] and [his] agents, attorneys and employees shall cooperate with the [Siskind] Trustee…"

19.     The Effective Date occurred on November 15, 2005.

Debtor's Bankruptcy Proceedings

20.     On July 31, 2007, this case was commenced by the filing of an Involuntary Petition against Debtor by Transamerican Commercial, Ltd. ("TCL") (docket no. 1).

21. TCL is an entity originally formed by Mr. Siskind and owned by The Enterprise Trust (the "Trust"). The Trust was formed in 1991 by Mr. Siskind for the benefit of his wife and children. The main asset of the Trust is the 100% ownership of TCL.

22. On August 15, 2007, Mr. Siskind filed on behalf of Debtor a Consent to Order of Relief (docket no. 6) (the "Consent to Relief"). The Siskind Trustee approved of Mr. Siskind filing the Consent to Relief before he filed it.

23. On August 15, 2007, Mr. Siskind filed on behalf of the Debtor a Motion to Convert Case to Chapter 11 (docket no. 7). The Siskind Trustee approved of Mr. Siskind filing the Motion to Convert Case to Chapter 11 before he filed it.

24. On August 20, 2007, this Court entered an Order Converting this Chapter 7 Case to a Case Under Chapter 11 on Debtor's Request (docket no. 10) (the "Chapter 11 Order"). In his Motion, Mr. Vincent claims that he did not become aware of this case until August 20, 2007.

25. On August 30, 2007, Vincent filed a Motion to Strike Consent Response and Motion to Convert Case to Chapter 11 ("Motion to Strike") (Docket No.16), a Motion to Reconsider the Order of Relief ("Motion to Reconsider") (Docket No. 17), and a Motion to Disqualify Alan Grochal and Tydings & Rosenberg, LLP. (Docket No. 18).

26. On September 17, 2007, Debtor listed its debt on its Schedules as being in excess of $325,215.36 (Docket No. 36). Only two pre-petition claimants, however, filed proofs of unsecured claims in this case for a total amount of $504.60.

27. On November 14, 2007, Debtor filed its Application to Employ GHS ("GHS Employment Application") (Docket No. 62) and, on November 20, 2007, filed a Disclosure of Compensation of Attorney for Debtor ("Disclosure of Compensation") (Docket No. 65).  2.

28. On December 11, 2007, the Siskind Trustee reached a global settlement with

Vincent ("Settlement Agreement"). Pursuant to that Settlement Agreement, the Siskind Trustee sold his interest in the Siskind bankruptcy estate to Vincent for approximately $2.6 million.

29. Shortly thereafter, on December 19, 2007, the Siskind Trustee filed its Motion for Approval of Sale of Assets and Settlement Agreement Between The Liquidating Trustee and Steven A. Vincent, Transamerican Dominican RD SA and Metroinvest Consultants Corp. Pursuant to 11 U.S.C. §§ 105(a) and 363(b) and Fed. Rule Bankr. P. 9019 ("Settlement Motion"). As a result, all of the major parties in the La Mesa case joined in a motion to stay the matters scheduled to be heard in this case until this Court had ruled on the Settlement, including La Mesa's Employment Application and Disclosure of Compensation. *See* Docket No. 82.

30. On January 4, 2008, Debtor objected to the Settlement Agreement in the Siskind case because that agreement did not provide for the payment of Debtor's creditors and professionals.

31. Debtor withdrew its objection based upon the parties' agreement that a claims process would be established in this case to pay Debtor's creditors and professional fees, which was read into this Court's record on April 2, 2008.

32. On July 3, 2008, this Court entered an order in the Siskind Bankruptcy approving the Settlement Agreement and the sale of the Siskind's Trustee's interest in La Mesa to Vincent (Siskind Docket No. 767).

33. On July 10, 2008, Debtor filed a Final Fee Application (Docket No. 109).

34. On September 22, 2008, this Court granted Debtor's Final Fee Application, approving GHS's attorneys' fees in the amount of $23,470.21 and expenses in the amount of $319.04, in total $23,789.25.

35. On January 22, 2009, the US Trustee filed its Motion to Convert to Chapter 7 or Dismiss on the grounds that Debtor was delinquent on its payment of Quarterly Fees in the amount of $1,800.00 and had not filed its Monthly Operating Reports, since June 2008.

36. For the reasons more fully described below, GHS supports the US Trustee's Motion to Convert this case to chapter 7 as being in the best interest of creditors and, conversely, opposes dismissal as such relief is clearly not in the interest creditors.

### ARGUMENT

37. Section 1112(b) of the Bankruptcy Code states, in applicable part:

> [O]n request of a party in interest, and after notice and a hearing, absent unusual circumstances specifically identified by the court that establish that the requested conversion or dismissal is not in the best interest of the creditors and the estate, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, ***whichever is in the best interests of creditors and the estate,*** if the movant establishes cause.

11 U.S.C. § 1112(b) (1) (emphasis added).

38. Assuming cause exists under §1112(b), which does not appear to be in dispute, the issue before this Court boils down to what action is in the best interests of creditors. *Id; Fraidin v. Andre Weitzman (In re Fraidin*, 110 F.3d 59 (4th Cir. 1997) (unpublished) ("Once cause is established, the decision of whether to convert is left to the discretion of the bankruptcy court based upon the best interest of the estate and the creditors."); *In re Superior Siding & Window, Inc.,* 14 F.3d 240, 242-43 (4th Cir.1994) . The answer to that question is straightforward in this case: Conversion to chapter 7.

39. This case is an involuntary one. Creditors were forced to petition for such relief because they were not being paid, despite that the value of Debtor's assets far exceeds its debts. Indeed, Debtor's Racetrack Property is more than sufficient to pay off all of Debtor's debt.

40. Debtor's principle, Vincent, however, has little to no incentive to comply with the filing requirements of chapter 11 and even less incentive to pay creditors, especially considering most of this debt was incurred by his former partner Siskind, while he was managing the day-to-day operations of Debtor.

41. If this case is converted to chapter 7, a chapter 7 trustee will be able to liquidate the Racetrack Property and should have sufficient funds to pay all of the US Trustee's outstanding fees and all of Debtor's creditors.

42. Conversely, if this case is dismissed, creditors will be forced to pursue Debtor in a costly and piecemeal fashion. This includes the US Trustee's office.

43. Indeed, because of the dramatically increased cost of piecemeal litigation, Debtor may have the perverse incentive to raise each party's litigation costs in effort to make such costs prohibitive. In short, dismissal of this case spells disaster for creditors. Since it is so clearly not in their best interest, this Court should not allow it in accordance with §1112(b).

44. Moreover, not only is it in creditors' best interest that this case be converted to chapter 7, it is also in the estate's interest. Debtor's schedules reflect pre-petition debt is excess of $325,215.36. Only two pre-petition claimants, however, filed proofs of unsecured claims in this case for a total amount of $504.60. If this case is converted to chapter 7, only the creditors that were diligent and filed timely proofs of claim will be paid and Debtor will not have to worry about the additional claims that would otherwise be outstanding.

45. In sum, the US Trustee's Motion to Convert this case to chapter 7 should be granted, so that Debtors' Racetrack Property is liquidated to pay creditors. Conversely, if this case is dismissed, it will lead to costly, piecemeal litigation, which will defeat the purpose of the involuntary bankruptcy and be a disaster for creditors.

## CONCLUSION

For the foregoing reasons, the US Trustee's Motion to convert this case to chapter 7 should be granted and this case should not be dismissed.

Respectfully submitted,

   /s/ Jan I. Berlage
Jan I. Berlage (#23937)
Gohn, Hankey & Stichel, LLP
201 N. Charles Street, Suite 2101
Baltimore, Maryland 21201
(410) 752-1261

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF MARYLAND

In re:                                *

    La Mesa Racing, LLC           *       Case No: 07-17069-NVA

        Debtor               *       (Chapter 11)

\*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*  \*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 27th day of January, 2009 a copy of Creditor, Jan I. Berlage's Objection to the Motion to Convert to Chapter 7 or Dismiss filed by U.S. Trustee was served via first class mail, postage pre-paid and the Court's CM/ECF system to:

    Alan J. Perlman, *Pro Hac Vice*
    Adorno & Yoss, LLP
    350 E. Las Olas Blvd., Suite 1700
    Ft. Lauderdale, Florida 33301

    Alan M. Grochal, Esquire
    Tydings & Rosenberg, LLP
    100 E. Pratt Street, 26th Floor
    Baltimore, Maryland 21202

    Jeremy S. Friedberg
    Leitess Leitess Friedberg & Fedder PC
    One Corporate Center
    10451 Mill Run Circle, Suite 1000
    Owings Mills, Maryland 21117

    Gary R. Greenblatt
    Mehlman, Greenblatt & Hare, LLC
    723 South Charles Street
    Suite LL3
    Baltimore, Maryland 21230

    Richard M. Kremen, Esquire
    Jodie E. Buchman, Esquire
    DLA Piper US LLP
    6225 Smith Avenue
    Baltimore, Maryland 21209

Office of the US Trustee
101 W. Lombard Street
Suite 2625
Baltimore, Maryland 21201


        /s/ Jan I. Berlage
    Jan I. Berlage (#23937)